FILED

2025 Sep-17  AM 10:37
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **CODY D. ROBINSON, et al.,** | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | |
| **v.** | } | **Case No.:  4:25-CV-1260-RDP** |
| | } | |
| **STATE FARM  FIRE MUTUAL** | } | |
| **INSURANCE COMPANY, et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## <u>MEMORANDUM OPINION</u>

This matter is before the court on Defendant State Farm Fire Mutual Insurance Company's Motion to Dismiss (Doc. # 2) and Defendant Alice Danford's Motion to Dismiss (Doc. # 3). This matter has been fully briefed. (Docs. # 2, 3, 8, 9). For the reasons within, Defendant State Farm Fire Mutual Insurance Company's Motion to Dismiss (Doc. # 2) is due to be granted and Defendant Alice Danford's Motion to Dismiss (Doc. # 3) is due to be granted.

## I.    Procedural Background

On February 24, 2025, Plaintiffs Cody and Maggie Robinson ("Plaintiffs") sued State Farm Fire Mutual Insurance Company ("Defendant State Farm") in the Circuit Court of Etowah County, Alabama. (Doc. #1-1 at 9). The action was initially filed as a Motion to Enforce Appraisal Process. (*Id.* at 10). On March 31, 2025, Defendant State Farm moved to dismiss Plaintiff's Motion to Enforce Appraisal Process in the Circuit Court of Etowah County. (*Id.* at 35-38). In response to Defendant State Farm's Motion to Dismiss, Plaintiffs filed their First Amended Complaint in the Circuit Court of Etowah County on May 8, 2025 and added Alice Danford ("Defendant Danford") as a defendant. (*Id.* at 70-79).

Defendant State Farm answered Plaintiffs' First Amended Complaint and Motion to Dismiss in the Circuit Court of Etowah County on May 22, 2025. (*Id.* at 146-64, 172-74). Defendant Danford moved to dismiss in the Circuit Court of Etowah County on June 12, 2025. (*Id.* at 188-92). Plaintiffs thereafter filed their Second Amended Complaint in the Circuit Court of Etowah County on July 21, 2025. (*Id.* at 204-15). Defendants removed the action to this court on August 4, 2025. (Doc. # 1).

## II.     Factual Background

In their Second Amended Complaint, Plaintiffs allege that "State Farm issued a policy to the Plaintiffs with effective dates of March 1, 2023, through March 1, 2024," insuring their home in Gadsden. (Doc. # 1-1 at 205 ¶ 6). Plaintiffs' home "is a historic home" with "an asbestos shingle roof that can no longer be replaced due to the ban on the use of asbestos in housing." (*Id.* ¶ 7). In August 2023, Plaintiffs' home was hit by a major storm "which caused significant damage to the asbestos roof" and resulted in "water damage inside the home." (*Id.* ¶ 8). Defendant Danford, an employee of Defendant State Farm, was assigned to inspect the home after it was damaged. (*Id.* ¶ 10). Plaintiffs allege that Defendant Danford "conducted a cursory, incomplete investigation" and "did not get on the roof and visually inspect it" as required by State Farm guidelines. (*Id.* ¶ 11).

Plaintiffs claim that they told Defendant Danford "that the roof shingles contained asbestos," and she requested that the shingles be tested for asbestos. (*Id.* ¶ 12). Plaintiffs did so; the test results confirmed the presence of asbestos. (*Id.*) Plaintiffs provided the test results to Defendant Danford. (*Id.*) Defendant Danford "insisted on performing her own testing" and came to Plaintiffs' home, where she took one of the fallen shingles and "began scraping the tile and agitating the asbestos fibers in the presence of [Plaintiff Maggie] Robinson." (*Id.* ¶ 13). Defendant Danford "did not warn [Plaintiff Maggie] Robinson she was about to release the asbestos fibers"

and was not wearing protective clothing or a respirator. (*Id.*) Defendant Danford did not attempt to contain the fibers (*Id.*) and then "attempted to enter [Plaintiffs'] home with asbestos fibers on her clothes" (*Id.* ¶ 14). Plaintiff Maggie Robinson reminded Defendant Danford that the shingles contained asbestos fibers and asked Defendant Danford not to enter the home. (*Id.* ¶ 14-15). Defendant Danford then "threatened [Plaintiffs] with claim denial if she were not allowed to enter the home." (*Id.* ¶ 16).

"On October 9, 2023, [Defendant] State Farm provided an initial estimate of $38,971.72 to repair the home." (*Id.* ¶ 19). Defendant State Farm provided another estimate on November 8, 2023 of $62,441.59. (*Id.* ¶ 20). Plaintiffs allege that the November estimate "provided only $7,620.00 to patch portions of the asbestos shingle roof" and "did not include an air conditioning unit that had been damaged by the storm." (*Id.*) Defendants also "proposed replacing the damaged asbestos shingles with reclaimed asbestos shingles." (*Id.*)

Defendant State Farm then provided a third estimate in December 2023 for $169,246.01. Plaintiffs allege that Defendant State Farm "did not provide [them] a contractor's estimate showing that a local contractor would perform the repairs for the price estimated" (*Id.* ¶ 22) and that the December estimate was "less than fifty percent of the amount needed to restore the home to its pre-loss condition." (*Id.* ¶ 23).

In February 2024, Plaintiffs had a contractor "inspect the home and provide an estimate to restore the home to its pre-loss condition." (*Id.* ¶ 25). This contractor's estimate was $425,509.20. (*Id.*) Under the appraisal provision of Plaintiffs' policy, Plaintiffs then sent Defendant State Farm their "ten-day pre-appraisal letter attaching a copy of the [contractor's] estimate and outlining the significant areas of disagreement between the two estimates." (*Id.* ¶ 26). Defendant State Farm acknowledged receipt of the letter. (*Id.*) On May 15, 2024, "Plaintiffs sent their demand for

appraisal to [Defendant] State Farm and requested that [Defendant] State Farm identify its appraiser within twenty days." (*Id.* ¶ 27). Defendant State Farm refused to submit to the appraisal process. (*Id.* ¶ 28, 30).

In August 2024, Defendant Danford sent Plaintiffs a letter asking questions about the contractor's estimate. (*Id.* ¶ 32). Plaintiffs answered Defendant Danford's questions and made corrections to the contractor's estimate. (*Id.* ¶ 33). Defendant State Farm then supplemented its December estimate with an additional $1,359.64. (*Id.* ¶ 34).

In November 2024, Defendant Danford sent Plaintiffs information on a shingle she believed should be used rather than the shingles in the contractor's estimate. (*Id.* ¶ 35). Plaintiffs agreed to use the suggested shingle, obtained an estimate from the contractor, and submitted the estimate to Defendant State Farm. (*Id.* ¶ 36). Defendant State Farm "refused to pay any additional amounts." (*Id.*)

Plaintiffs could not begin repairs on their home due to this dispute. (*Id.* ¶ 43). Defendant State Farm's counsel informed Plaintiffs' counsel on June 17, 2025 that the loss was approaching the "replacement cost benefits" expiration date, which is "two years after the date of loss of Augus[t] 11, 2023," and "[i]f Plaintiffs wish to exercise their rights under the replacement cost benefits," they should "submit receipts and/or other documentation . . . for replacement by August 11, 2025." (*Id.* ¶ 44). Plaintiffs asked Defendant State Farm to waive the deadline given the present litigation, but Defendant State Farm refused. (*Id.* ¶ 45-46).

## III.    Standard of Review

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative

4

level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id*. at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,' " the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id*. A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that all of the well-pleaded facts,

accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

## IV.    Analysis

In their Second Amended Complaint, Plaintiffs allege six counts: (1) Breach of Contract, (2) Bad Faith, (3) Negligent/Wanton Hiring, Training & Supervision, (4) Negligence/Wantonness against Defendant Danford, (5) Intentional Infliction of Emotional Distress, and (6) Declaratory and Injunctive Relief. (Doc. # 1-1 at 210-15). Defendants moved to dismiss two of the claims: Plaintiffs' Negligence/Wantonness (Count 4); and their Intentional Infliction of Emotional Distress ("IIED") (Count 5). (Docs. # 2, 3, 9). After careful review, the court concludes that these claims are due to be dismissed.

### A.    Plaintiffs cannot maintain their Negligence/Wantonness claim against Defendant Danford.

Plaintiffs allege that, as a State Farm claims employee, Defendant Danford had a duty to "diligently investigate" claims, "make an objective evaluation" of claims, and operate "in compliance with . . . laws and regulations that impact claims in the appropriate state." (Doc. # 1-1 at 212). Plaintiffs also suggest that the Alabama Independent Adjuster statute informs the duty that Defendant Danford owed to Plaintiffs. (*Id.* at 212-13); *see* Ala. Code §§ 27-9A-1 to 27-9A-18.

Alabama law does not recognize a cause of action for the negligent or wanton handling of insurance claims. *Kervin v. S. Guar. Ins. Co.*, 667 So. 2d 704, 706 (Ala. 1995) ("[T]his Court has consistently refused to recognize a cause of action for the negligent handling of insurance claims, and it will not recognize a cause of action for alleged wanton handling of insurance claims."); *Pickett v. State Farm Fire & Cas. Co.*, No. 2:18-CV-00266-RDP, 2018 WL 1609634 at *2 (N.D. Ala. Apr. 3, 2018). Defendant Danford is not an independent adjuster. Rather, she is a salaried employee of Defendant State Farm. (Doc. # 1-1 at 205 ¶ 10); Ala. Code § 27-9A-3(b) ("An

independent adjuster does not include . . . [a] salaried employee of an insurer.") Because the duty alleged by Plaintiffs concerns Defendant Danford's duty to handle their insurance claim appropriately, Plaintiffs' claim for Negligence/Wantonness against Defendant Danford is due to be dismissed.

**B.    Plaintiffs cannot maintain their IIED/Outrage claim against Defendants.**

In Alabama, "[t]he tort of outrageous conduct or intentional infliction of emotional distress involves 'extreme and outrageous conduct' by one who 'intentionally or recklessly causes severe emotional distress to another.'" *Stewart v. Matthews Indus., Inc.*, 644 So. 2d 915, 918 (Ala. 1994) (citing *Am. Rd. Serv. Co. v. Inmon*, 394 So.2d 361, 365 (Ala. 1980)). To state a claim for IIED/outrage, the plaintiff must allege "(1) that the defendant's conduct was intentional or reckless; (2) that it was extreme and outrageous; and (3) that it caused emotional distress so severe that no reasonable person could be expected to endure it." *Ex parte Crawford & Co.*, 693 So. 2d 458, 460 (Ala. 1997). For conduct to be extreme or outrageous, it must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Id.* (citing *Inmon*, 394 So.2d at 365).

The Supreme Court of Alabama has recognized claims for outrage in the insurance context where an insurance agent coerces the insured into the settlement of an insurance claim. *See Cont'l Cas. Ins. Co. v. McDonald*, 567 So. 2d 1208, 1220 (Ala. 1990) (affirming a jury verdict against an insurer on an outrage claim where the evidence showed pervasive delays, insufficient explanations for the delays, and attempts to persuade the insured to accept an unfavorable settlement). But a mere delay or refusal to pay an insurance claim, without more, is not outrageous or barbaric conduct under Alabama law. *Mohammaadipour v. Liberty Mut. Fire Ins. Co.*, No. 2:17-CV-01014-RDP, 2017 WL 11454583, at *1 (N.D. Ala. Oct. 23, 2017); *see Philippou v. Am. Nat'l Prop. &*

*Cas. Co.*, No. 2:16-CV-695-SRW, 2017 WL 2129900, at *3 (M.D. Ala. May 16, 2017). This is so because an insurer has the right to "insist on its legal rights in a permissible way." *See Cont'l Cas. Ins. Co.*, 567 So. 2d at 1220. There is a narrow exception. An insurer is not insulated from liability for intentional infliction of emotional distress if it attempts to use the claims adjudication process for impermissible ends. *Id.*

In this case, Plaintiffs allege that Defendants "intended to cause the Robinsons emotional distress or knew or should have known that their conduct was likely to cause the Robinsons emotional distress." (Doc. # 1-1 at 214 ¶ 69). Plaintiffs also claim that Defendants' "conduct in continually ignoring damage pointed out by the Robinsons, refusing to pay for obvious repairs, suggesting that the Robinsons use re-claimed asbestos, and exposing the Robinson to asbestos fibers was extreme and outrageous so as to go beyond all bounds of decency and be regarded as atrocious and utterly intolerable in a civilized society." (*Id.*) Finally, Plaintiffs claim that "Defendants' intentional or reckless conduct caused the Robinsons emotional distress" and that "[t]he Robinsons' emotional distress was so severe that no reasonable person could be expected to endure it." (*Id.*)

In ruling on a Rule 12(b)(6) motion, the court must "eliminate any allegations in the complaint that are merely legal conclusions." *Kivisto*, 413 F. App'x at 138. Plaintiffs' allegations that Defendants "intended to cause the Robinsons emotional distress" and that "[t]he Robinsons' emotional distress was so severe that no reasonable person could be expected to endure it" (Doc. #1-1 at 214 ¶ 69) are recitations of the elements of IIED/outrage and are due to be eliminated as legal conclusions.

Further, Plaintiffs' allegations that Defendants ignored damage pointed out by Plaintiffs, refused to pay for obvious repairs, suggested Plaintiffs use reclaimed asbestos tiles, and exposed

Plaintiffs to asbestos fibers fall outside the limited scope of the tort of IIED/outrage in Alabama. While the Supreme Court of Alabama has recognized the tort of outrage in insurance contexts, the conduct here does not rise to the level of conduct "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency." *Ex parte Crawford & Co.*, 693 So. 2d at 460. Moreover, a mere delay or refusal to pay an insurance claim is not outrageous or barbaric conduct under Alabama law. *Mohammaadipour*, 2017 WL 11454583, at *1; *see Philippou*, 2017 WL 2129900, at *3. Thus, Plaintiffs' IIED/Outrage claim against Defendants is due to be dismissed.

## V.    Conclusion

For the reasons explained above, Defendant Danford's Motion to Dismiss is due to be granted and Plaintiffs' claims against her are due to be dismissed with prejudice. Defendant State Farm's Motion to Dismiss is due to be granted and Plaintiffs' claim for IIED/Outrage is due to be dismissed with prejudice. A separate order will be entered.

**DONE** and **ORDERED** this September 17, 2025.

**R. DAVID PROCTOR**
CHIEF U.S. DISTRICT JUDGE